**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Arianny Celeste Lopez et al., | Civil Action No. 3:21-cv-00657-wmc |
| Plaintiffs, | Judge William M. Conley |
| v. | |
| Meyers' G.M. Enterprises, Inc. et al. dba Cajun Club | **REPORT OF STEPHEN CHAMBERLIN** |
| Defendants. | |

Report of Stephen Chamberlin

IMAGE EXPERT WITNESS
CONSULTING AND VALUATION
TERRAZOS SUITES
1871 NW SOUTH RIVER DRIVE P608
MIAMI, FL. 33125
PHONE: (310) 666-3629

Report Dated May 2, 2023

©2023 ImageExpertWitness, Miami, FL.

Report of Stephen Chamberlin
*Lopez et al. v. Meyers G.M. Enterprises et al. dba Cajun Club*

## Table of Contents

I.      ASSIGNMENT AND OPINION SUMMARY ........................................................................ 4

II.     FAIR MARKET VALUE DAMAGES TABLE.................................................................. 6

III.    QUALIFICATIONS.............................................................................................. 7

   1.   Narrative .................................................................................................. 7

   2.   Professional Experience................................................................................ 8

   3.   Education .................................................................................................. 10

   4.   Associations .............................................................................................. 10

IV.     GENERAL METHODOLOGY AND APPLICATION ......................................................... 11

   1.   Definitions................................................................................................ 11

   2.   Primary Factors Considered by Models Before Consenting to a Job ............................ 13

   3.   Establishing a Model's "Day Rate" .............................................................. 14

   4.   Additional Elaboration on "Usages" in the Model & Talent Industry ........................... 16

   5.   Additional Factors Considered in Establishing Fair Market Value ................................. 18

   6.   Assessment of Fair Market Value Damages ..................................................... 19

   7.   Categories of Documents and Information Considered in Forming Opinions ................. 20

   8.   Additional Professional Considerations............................................................ 21

V.      PRIOR EXPERT TESTIMONY .................................................................................. 22

VI.     INDIVIDUAL FAIR MARKET VALUE ANALYSIS FOR EACH MODEL ................ 25

   1.   Arianny Celeste Lopez.................................................................................. 25

   2.   Brenda Geiger ............................................................................................ 41

   3.   Cielo Jean Gibson ...................................................................................... 49

   4.   Hillary Hepner .......................................................................................... 62

   5.   Jaime Edmondson Longoria ......................................................................... 72

   6.   Jessica Hinton ........................................................................................... 82

   7.   Joanna Krupa ............................................................................................ 93

   8.   Krystal Hipwell.......................................................................................... 111

   9.   Lina Posada.............................................................................................. 123

  10.   Lucy Pinder.............................................................................................. 135

  11.   Masha Lund ............................................................................................. 147

  12.   Rosie Wicks .............................................................................................. 160

  13.   Tara Leigh Patrick...................................................................................... 171

VII.    ADDITIONAL MATERIAL CONSIDERED IN FORMING MY OPINIONS............. 183

   1.   Examples of Defendants' Advertising and Media Coverage ...................................... 183

Report of Stephen Chamberlin
*Lopez et al. v. Meyers G.M. Enterprises et al. dba Cajun Club*

2.      Examples of Models' Work Product ............................................................................ 191

3.      Model & Talent Industry Standards and Other Reference Material Considered ............ 205

Report of Stephen Chamberlin
*Lopez et al. v. Meyers G.M. Enterprises et al. dba Cajun Club*

## I.      ASSIGNMENT AND OPINION SUMMARY

I have been retained by Aronowitz Law Firm PLLC on behalf of Arianny Celeste Lopez, Brenda Geiger, Cielo Jean Gibson, Hilary Hepner, Jaime Longoria, Jessica Hinton, Joanna Krupa, Krystal Hipwell, Lina Posada, Lucy Pinder, Masha Lund, Rosie Wicks, and Tara Leigh Patrick, (hereinafter collectively referred to as "Plaintiffs" or "Models") to examine and evaluate the use of the Models' images by Meyers' G.M. Enterprises, Inc. dba Cajun Club and R&N Enterprises, Ltd. dba Cajun Club, (collectively "Defendants" or "Cajun Club"). I have further been asked to opine on the method that would have been employed, and factors considered, by a professional modeling agent had Defendants operated through legal channels and attempted to obtain an agreement (limited license) to create the images at issue in this case and to use those images for advertising, distribution, and other forms of usage. In undertaking this assignment, I render an opinion on the fair market value compensation the Models should have been paid by Defendants based on my expertise and experience in the Model & Talent Industry.

In this report, I discuss those factors that would be considered by talent, clients, and their respective agents and representatives prior to booking a professional model for a job advertising a strip club. I also attempt to recreate a negotiation process that did not occur. As such, my opinion as to the fair market value takes into consideration the factors normally considered by talent, clients, and their respective agents and representatives when negotiating the value of the use of the models' images to promote the clients' goods or services.

Because there is simply no market for the use of images of professional models of the caliber of the Models here – or, to my knowledge, any market whatsoever – by strip clubs, I must additionally account for the value inherent in the ability of each Model to control the course and selection of business opportunities and, thus, the direction of their career which, in this case, was taken away by Defendants. These considerations are always a component of the process by which the parties to a negotiation would determine fair market value for use of a Models' image.

I am informed and do believe the Defendants' use of each Model's image and each Models' lack of express consent for such use is not in dispute by the Defendants. I further understand that at no time have the Defendants approached the Models individually, or collectively, or approached or negotiated with the any of the Models' agents or representatives, for permission to use the Models' images in connection with the Defendants business activities.

My opinions are based on a thorough review of the images of the Models' used by Defendants as alleged in the Complaint, review of supporting documentation, discussions with each Model as well as agency representatives and other individuals in the modelling industry as outlined in this Report, assessment of each Models' current career station and personal factors that would impact a fair market value negotiation, and my experience.

It is my opinion that each of the Models has sustained quantifiable harm and injury as a result of Defendants use of the Models' images. **In particular, each Model was, at a minimum, denied the fair market value payment she would have received if Defendants had obtained her consent to use her image.** My opinions as well as the methodology for calculating fair market value damages for each Model and the results of my review are detailed in this Report.

Report of Stephen Chamberlin
*Lopez et al. v. Meyers G.M. Enterprises et al. dba Cajun Club*

Rather than create a separate report for each Model, I have consolidated all opinions into a single report but have separately analyzed each individual Model when assessing fair market value and damage to professional standing due to unauthorized use of their image by Defendants.

In this case, the Defendants circumvented the negotiation process altogether.

As a consequence of the Defendants bypassing all levels of negotiation with the Models, we must retroactively assess the factors that would be accounted for in the proper contractual negotiation process. This includes the status of the Models, the nature of the use, and true harm to the Models in not being able to control the way in which her image was used.

**Set forth in Table below, is my opinion that the fair market value of all presently known uses of the Models' images by Defendants, in the aggregate, totals $1,215,000.**

**This is my opinion of fair market value for one year of use of the Models' images by Defendants.** Depending on the date first used and the subsequent date that the image was removed, a rollover fee would typically be charged for each year of use beyond the first, but my opinion in this report does not include a calculation of such rollover fees.

It is important to note that any determination of fair market value is based on a number of factors. In this report I outline, demonstrate, and explain how those factors are usually considered in the model and talent industry and how I have applied them to the Defendants use of the Plaintiffs' images. The listed Fair Market Value is my opinion of the amount of the actual damages sustained by the Models but does not reflect amounts at which the Models would have actually accepted to participate, endorse, or consent to be photographed or portrayed in such a manner as used by Defendants. I understand that some Models may not accept an assignment to be a model for a strip club at any level of compensation.

The foregoing opinions, analysis, and conclusions are based upon the documents and information I have reviewed as of the date of this report, as well as my experience in the modeling industry. I expressly reserve the right to amend, supplement or modify this Report and the opinions expressed herein within the limits prescribed by the Court based upon new information provided to me. I further expressly reserve the right to prepare a rebuttal report in the event that the Defendants retain an expert who is qualified to, and does, challenge any aspect of this Report.

I am being compensated at my customary rate of $600 per hour for my work in this case. My compensation is not contingent on the outcome of this litigation, or on the opinions I express.

|     /s/ Stephen Chamberlin     |     May 2, 2023     |
|---|---|
| **Stephen Chamberlin** | **Date** |